| | | | |
|---|---|---|---|
| | AUSA: Thomas Cribbins | Telephone: (313) 226-9100 | |
| AO 91 (Rev. 11/11) Criminal Complaint | Task Force Officer: Derrick Hadder | Telephone: (313) 965-2323 | |

# UNITED STATES DISTRICT COURT
### for the

## Eastern District of Michigan

United States of America

v.

Ransom Murray BUTLER

Case No.

Case: 2:26−mj−30269
Assigned To : Unassigned
Assign. Date : 5/12/2026
Description: CMP USA V. BUTLER
(DJ)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ May 10, 2026 _____ in the county of _____ Wayne _____ in the _____ Eastern _____ District of _____ Michigan _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) and 924(e) | Felon in Possession of a Firearm Following Three Serious Felon Convictions |
| 18 U.S.C. § 924(c) | Possession of a Firearm in Furtherance of a Drug Trafficking Crime |
| 21 U.S.C. § 841(a)(1) and (b)(1)(B) | Possession of a Controlled Substance with Intent to Distribute |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Derrick Hadder, TFO - FBI
_____
Printed name and title

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: _____ May 12, 2026 _____

_____
Judge's signature

City and state: _Detroit, Michigan_

Hon. Kimberly G. Altman, United States Magistrate Judge
_____
Printed name and title

| Save | Print |
|---|---|

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Derrick Hadder, being duly sworn, do hereby state the following:

## I.   INTRODUCTION

1.   I am a Police Officer with the Canton Township Police Department and have been employed since June 2020. Prior to being employed by Canton Township, I was employed as a Police Officer with the Dearborn Police Department for 25 years. Currently, I am assigned to the FBI as a Task Force Officer (TFO) and have been in my current position since April 2025. I am a Task Force Officer on the Detroit Violent Crime Task Force. As a member of VCTF, I am tasked with investigating the unlawful possession of firearms and violent firearm crimes committed within the Eastern District of Michigan.

2.   During my law enforcement career, I have participated in numerous federal and state criminal investigations involving firearms, violent crime, and drug trafficking, including investigations involving violations of 18 U.S.C. § 922(g)(1) (Felon in Possession of a Firearm). I have participated in various aspects of these criminal investigations, including conducting interviews, physical surveillance, and obtaining and executing federal and state search warrants.

3.   I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), and I am empowered to conduct investigations and make arrests of offenses enumerated under federal law.

4.      I make this affidavit from personal knowledge based on my participation in this investigation, including interviews conducted by myself and/or other law enforcement agents, communications with others who have personal knowledge of the events and circumstances described herein, review of reports by myself and/or other law enforcement agents, and information gained through my training and experience. The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all the information known to law enforcement related to this investigation.

5.      The FBI is currently conducting a criminal investigation concerning Ransom Murray BUTLER (DOB: XX/XX/1984), for violations of 18 U.S.C. § 922(g)(1) and 924(e)-Felon in Possession of a Firearm Following Three Serious Felony Offense Convictions; 21 U.S.C. § 841(a)(1) and (b)(1)(B)-Possession with Intent to Distribute a Controlled Substance; and 18 U.S.C. § 924(c)-Possession of a Firearm in Furtherance of a Drug Trafficking Crime.

## II.    CRIMINAL HISTORY

6.      I reviewed records related to BUTLER's criminal history and learned the following:

        a.      On or about July 2, 2003, BUTLER was arrested and charged with Assault with a Dangerous Weapon (Felonious Assault). On November 5, 2003, BUTLER pleaded guilty as charged in the

2

Third Judicial Circuit Court, Wayne County, Michigan. On or about February 18, 2004, BUTLER was sentenced to 2 years' probation and 90 days on tether;

b. On or about January 13, 2004, while on bond in the Felonious Assault case above, BUTLER was charged with Assault with Intent to Murder, Felon in Possession of a Firearm, Carrying a Concealed Weapon, Possession of Narcotics/Cocaine-Less Than 25 Grams, and Felony Firearm. On or about April 14, 2004, BUTLER was convicted of Assault with Intent to Do Great Bodily Harm Less than Murder, Possession of Narcotics/Cocaine-Less Than 25 Grams, and Felony Firearm in the Third Judicial Circuit Court, Wayne County, Michigan. On or about April 28, 2004, BUTLER was sentenced to an aggregated term of 6 years and 9 months to 12 years' incarceration;

c. On or about November 12, 2013, BUTLER was charged with two counts of Delivery/Manufacture of Narcotics or Cocaine-Less than 50 Grams. On January 3, 2014, BUTLER pleaded guilty to one count of Delivery/Manufacture of Narcotics or Cocaine-Less than 50 Grams in the Third Judicial Circuit Court,

3

Wayne County, Michigan. On or about January 22, 2014, BUTLER was sentenced to two years' probation and a $928 fine;

d.     On or about November 6, 2016, BUTLER was charged with Delivery/Manufacture of Marijuana, Felon in Possession of a Firearm, and Felony Firearm. On April 3, 2017, BUTLER pleaded guilty to one count of Felon in Possession of a Firearm in the Third Judicial Circuit Court, Wayne County, Michigan. On or about July 19, 2017, BUTLER was sentenced to six months' incarceration, two years of probation, and a $1,498 fine;

e.     On or about December 4, 2018, a federal grand jury sitting in the Eastern District of Michigan returned an indictment charging BUTLER with one count of Possession with Intent to Distribute More Than 28 Grams of Cocaine Base. On September 18, 2019, BUTLER pleaded guilty as charged. On January 21, 2020, BUTLER was sentenced to a term of 60 months' incarceration, followed by four years of supervised release.

f.     On or about March 29, 2025, while on federal supervised release, BUTLER was charged with one count of Delivery/Manufacture of Narcotics or Cocaine-Less than 50 Grams     and     one     count     of     Possession     of

4

Methamphetamine/Ecstasy. On November 10, 2025, BUTLER pleaded guilty to Delivery/Manufacture of Narcotics or Cocaine-Less than 50 Grams in the Third Judicial Circuit Court, Wayne County, Michigan. On December 2, 2025, BUTLER was sentenced to 6 months' incarceration, followed by two years' probation.

7.     Based on my training and experience, defendants are warned of the maximum penalty when they enter a plea of guilty to a felony. Additionally, defendants are advised that they are pleading guilty to a felony. Based on the number of BUTLER's convictions, the time he has spent incarcerated or under supervision as a result of those convictions, and the fact that BUTLER has previously been convicted of the offense of Felon in Possession of a Firearm, there is probable cause to believe that BUTLER is aware of his status as a convicted felon.

8.     Further, BUTLER had been convicted of at least three different offenses—each qualifying under 18 U.S.C. § 924(e) as violent felonies or serious drug offenses—committed on occasions different from one another.

## III.   PROBABLE CAUSE

9.     On May 10, 2026, at approximately 10:17 PM, Canton Police received a 911 call to 50374 Uptown Ave, Apartment #204 Canton, Michigan. The 911 caller stated BUTLER was in possession of a gun and had threatened to kill BUTLER's

5

wife. Prior to the officers' arrival, dispatch advised that the suspect had left the apartment wearing a green sweatsuit with white lettering and was still in possession of the handgun. The caller also expressed concern for their personal safety if BUTLER learned who had called. The caller stated BUTLER may be hiding near the exit door outside the apartment building. Later during the call, the 911 caller stated that BUTLER re-entered the apartment.

10. Initial responding officers arrived and observed the VICTIM, BUTLER's wife, running away from 50374 Uptown and appeared to hide. As officers approached, the VICTIM came out of hiding, was out of breath and appeared to be very frightened. In addition, the female was shoeless. The female began to walk away from the officers. Officers requested the VICTIM to stop and explain what had happened; however, the VICTIM continued walking and would not discuss the incident. The VICTIM advised she wished to check on her children inside the apartment and advised she did not know where BUTLER had gone.

11. The VICTIM was asked where her vehicles were and she pointed to the area of the handicap parking spaces directly northeast of the apartment building. Officers then observed a tall black male, wearing a green jumpsuit, walking away from the parked vehicles the VICTIM had pointed toward. The VICTIM was asked if the tall black male was BUTLER. She stated that it was.

6

12.    BUTLER was detained for further investigation and secured in handcuffs due to the possibility he was in possession of a firearm.  As BUTLER was being secured, he began shouting to the VICTIM because he was upset that "she was going to do this to him."

13.    The VICTIM did confirm that BUTLER had been in possession of a handgun; however, she did not know where it currently was. The VICTIM was asked what vehicles BUTLER had access to and she replied the Tahoe and a 2023 Chrysler Pacifica, Michigan Plate FBL9577. The VICTIM was requested to look for the vehicle keys and advised she could only find one set of keys to the 2023 Pacifica. The VICTIM added that the Pacifica is registered to her; however, BUTLER is the primary driver of the Pacifica.

14.    It was determined that there was probable cause to arrest BUTLER for Domestic Violence, and he was then advised he was under arrest.  A search subsequent to arrest revealed the keys to the Pacifica in his pocket.

15.    Upon checking the Pacifica, a handgun was observed in plain view on the floorboard of the driver's seat. Next to the handgun was a small baggie of suspected narcotics. Officers noted that this was one of the vehicles that BUTLER had been observed walking away from.

16.    The VICTIM provided verbal consent to search the Pacifica, if she was present for the search. The VICTIM was allowed to observe the search, and the

7

handgun and narcotics that were recovered from the Pacifica. She denied any knowledge of the handgun or narcotics that were in the Pacifica.

17.     Upon opening the driver's door, officers recovered the handgun from the floorboard. The handgun was identified as a Springfield Armory XD-40 .40 caliber handgun, serial # GM125398.  LEIN revealed the handgun had been reported stolen out of Wyandotte.

18.     The handgun recovered from the Pacifica was also loaded with 10 rounds of .40 caliber ammunition.

19.     Next to the handgun, officers located a small baggie containing what appeared to be crack cocaine. Upon looking further under the driver's seat, two additional baggies were located.  One baggie contained what officers believed to be heroin and the second baggie contained a large quantity of crack cocaine.

20.     Truenarc testing revealed the larger baggie of suspected crack cocaine tested positive as cocaine. The baggie was weighed and weighed 41.08 grams without packaging.

21.     Truenarc testing revealed the smaller baggie of suspected crack cocaine also tested positive as cocaine and weighed 4.12 grams without packaging.

22.     Truenarc testing revealed the small baggie of suspected heroin tested positive for fentanyl and weighed 6.5 grams without packaging.

8

23.     On May 12, 2026, I contacted ATF Interstate Nexus Expert, Special Agent Mike Jacobs, and provided information about the Springfield Armory XD-40, .40 caliber handgun. SA Jacobs concluded that the firearm was manufactured outside the State of Michigan and is a firearm as defined in Title 18 U.S.C., Chapter 44, Section 921(a)(3).

## IV.     CONCLUSION

24.     Probable cause exists to believe that on May 10, 2026, Ransom Murray BUTLER knowingly possessed a firearm after having been convicted of three serious felony offenses in violation of Title 18 U.S.C. Sections 922(g)(1) and 924(e). Further, probable cause exists to believe that on May 10, 2026, Ransom Murray BUTLER possessed a controlled substance with intent to distribute in violation of Title 21 U.S.C. Sections 841(a)(1) and (b)(1)(B). Further, probable cause exists to believe that on May 10, 2026, Ransom Murray BUTLER possessed a firearm in furtherance of a drug trafficking crime in violation of Title 18 U.S.C. Section 924(c). These violations occurred within the Eastern District of Michigan.

Respectfully submitted,

Derrick Hadder, Task Force Officer
Federal Bureau of Investigation

9

Sworn to before me and signed in my presence
And/or by reliable electronic means

Honorable Kimberly G. Altman
United States Magistrate Judge

Dated: __May 12, 2026__

10